430 So.2d 60 (1983)
STATE of Louisiana
v.
Terry EDWARDS.
No. 82-KP-2743.
Supreme Court of Louisiana.
April 4, 1983.
Concurring Opinion May 9, 1983.
Rehearing Denied May 13, 1983.
*61 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., John H. Craft, G. Fred Ours, Asst. Dist. Attys., for relator.
Ralph S. Whalen, Jr., New Orleans, for respondents.
MARCUS, Justice.
Terry Edwards and William H. McNabb were charged in the same information with the theft of $248,192 from Purolator Security, Inc. in violation of La.R.S. 14:67. Represented by the same retained counsel, Milton P. Masinter, defendants were tried together by a jury and found guilty as charged. Thereafter, each defendant was sentenced to imprisonment of seven years.[1] On appeal,[2] Edwards' conviction and sentence were affirmed by this court. State v. Edwards, 400 So.2d 1370 (La.1981). Subsequently, Edwards filed an application for post conviction relief in the district court claiming that he was denied effective assistance of counsel because of a conflict of interest between himself and McNabb, an issue not litigated on appeal. The alleged conflict was the disparity in the weight of the evidence between the defendants: the case against McNabb was strong and direct, whereas the evidence against Edwards was weak and circumstantial. The trial judge granted relief under the application and ordered a new trial for Edwards. The state's application for supervisory writs was granted[3] with the following order:
The ruling of the trial court is reversed; the case is remanded for an evidentiary hearing on the habeas application and for a ruling thereon; the right to apply for review is reserved to both sides.
At the evidentiary hearing, Milton P. Masinter affirmed that he had represented both McNabb and Edwards at the prior trial. He stated that he had advised Edwards about the disparity in the evidence more than once prior to trial; however, Edwards wanted to go forward with him as his attorney "for other reasons which I don't feel necessary to divulge at this time." Mr. Masinter also recalled a meeting in the judge's chambers at which the "Court did make them [defendants] aware of what was going on and what the consequences would be" and Edwards "acknowledged what was said and he [Edwards] said it was okay and that is what he wanted to do was to go forward." Edwards, while denying that Mr. Masinter ever told him that there would be problems representing both McNabb and himself, admitted that Mr. Masinter advised him of the disparity in the evidence but told him that "it would be advantageous for him to represent both myself and Mr. McNabb." When questioned as to the advantage of going to trial with McNabb, Edwards stated:
Milton [Masinter] could control him [McNabb]. He could control whether to put him on the stand or not. He could control the questions asked of him. He could control everything.
However, Edwards denied that he was afraid McNabb was going to testify against *62 him. Rather, he feared McNabb because he was "mentally unstable." Edwards complained that he was denied the right to testify on his own behalf.
Edwards' wife also testified at the hearing. She stated that McNabb "was feeling very bitter towards my husband and that he [McNabb] wanted revenge and that he [Masinter] felt that if he tried the two men separately that McNabb would testify against my husband for revenge." She also stated that Mr. Masinter told her that McNabb was "psychotic and unpredictable" and that the only way he could maintain control over her husband's defense was to try McNabb with him.
At the conclusion of the hearing, the trial judge, finding a conflict of interest based on the disparity of the evidence between the defendants and the lack of any evidence in the record that Edwards was advised "of the possible problems in being represented by one attorney," granted Edwards a new trial. On the state's application, we granted a writ under our supervisory jurisdiction to review the correctness of that ruling.[4]
The relationship between joint representation and ineffective assistance of counsel has been thoroughly examined by the United States Supreme Court in its opinions rendered in Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), and Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); State v. Marshall, 414 So.2d 684 (La.1982). In Holloway, defendant raised the issue of a conflict of interest prior to a joint trial. In this situation, the Court held that the trial judge is required "either to appoint separate counsel or to take adequate steps to ascertain whether the risk [of a conflict of interest] was too remote to warrant separate counsel." In Sullivan, the defendant did not raise the issue of conflict of interest either before and during his separate trial. Rather, the defendant, as in the instant case, raised the issue for the first time after his trial. In this situation, the Court held that a defendant "in order to establish a violation of the Sixth Amendment ... must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." In addition, the Court held that "[u]nless the trial court knows or reasonably should know a particular conflict exists, the court need not initiate an inquiry." See also Wood v. Georgia, 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981). Recently, in State v. Marshall, supra, we held that the time at which a concern over the effects of multiple representation is raised is the determinative factor in deciding whether the rules of Holloway or Sullivan are controlling.[5] Therefore, because in the instant case Edwards raised the issue after the trial, Sullivan controls.
The trial judge's basis for finding a conflict of interest was the disparity of the evidence between the defendants. However, the mere fact that the evidence against one codefendant is stronger than that against the other does not indicate, much less demonstrate, the existence of a conflict of interest between the defendants. United States v. Gallagher, 437 F.2d 1191 (7th Cir.1971), cert. denied. Thus, the trial judge's reliance on the disparity of the evidence for finding a conflict of interest between the defendants was misplaced.
Rather, the proper test as set forth in Sullivan is whether Edwards can show that an actual conflict adversely affected his lawyer's performance. Our review of the record reveals that Mr. Masinter conducted a vigorous defense for each of the defendants. Moreover, it should be noted that the only witnesses, four in number, called by the defense testified on behalf of Edwards. In addition, the trial transcript does not indicate, nor is it alleged, that there existed any antagonistic defenses. Edwards' only complaint, other than the disparity in the evidence, is that he was denied the right to testify on his own behalf because of the prejudicial effect it would have had on McNabb. However, this is a *63 mere allegation made after trial. Edwards made no showing of how his defense would have been benefited by his testimony. On the contrary, evidence adduced at the post conviction hearing indicates a possible advantage to Edwards to have had joint representation.[6] Moreover, the possibility that another approach should be used in a trial with better results to a defendant exists in every case and is far from making out a deprivation of a constitutional right. United States v. Foster, 469 F.2d 1 (1st Cir. 1972). Finally, there is nothing in the record in this case to indicate that the trial judge had a duty to inquire whether there was a conflict of interest. Hence, we are unable to say that Edwards made a sufficient showing of an actual conflict of interest adversely affecting his lawyer's performance.
Finally, the state argues that even if there was an actual conflict, Edwards waived his right to conflict-free counsel. In considering whether Edwards waived his right to the assistance of counsel free from any conflict of interest, it is necessary to consider the "facts and circumstances surrounding... [this] case, including the background, experience and conduct of" Edwards. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Edwards was the owner and operator of a used car business and as Mr. Masinter stated: "He [Edwards] is not an ignorant man.... He knew what we were up against, where we were going, and what was happening." Our review of the evidence adduced at the post conviction hearing convinces us, even assuming a conflict of interest did exist, that Edwards made a knowing and intelligent waiver of his right to representation free from conflict of interest. Moreover, contrary to the trial judge's impression, there is no requirement either under state law or decisions of the United States Supreme Court that the waiver be made part of the record.
In sum, we conclude that Edwards failed to show an actual conflict of interest that adversely affected his lawyer's performance. Moreover, even assuming such a conflict did exist, we find that Edwards made a knowing and intelligent waiver of his right to conflict-free counsel under the circumstances of this case. Hence, the trial judge erred in granting a new trial in this post conviction proceeding. We must reverse.

DECREE
For the reasons assigned, the ruling of the trial court is reversed and set aside.
LEMMON, Justice, concurring.
I fully agree with the majority opinion, because we are reviewing the trial court's decision on a postconviction application. However, if the matter had come before the trial court on a timely filed motion for a new trial based on the "interest of justice" under La.C.Cr.P. Art. 851(5), a different standard of review would be applicable, and a different result might obtain.[1] The "interest of justice" ground for granting a new trial vests the trial court with broad discretion to order a new trial whenever the judge has substantial doubts as to the "fairness" of the conviction.
Here, however, the issue was not raised until the conviction had been affirmed on appeal, and the trial court did not have the latitude available when deciding a motion for a new trial. The trial court was bound to adhere to and respect the limits imposed by the legislative provisions regulating postconviction proceedings.
The grounds for postconviction relief are set forth in La.C.Cr.P. Art. 930.3 and do not include a general "interest of justice" provision. Under the circumstances presented *64 here, the trial judge was not empowered to grant relief unless he reasonably found that defendant's conviction "was obtained in violation of the constitution of the United States or the State of Louisiana". La.C. Cr.P. Art. 930.3(1). Therefore, as stated by the majority, defendant was obliged to demonstrate that the joint representation created "an actual conflict of interest [which] adversely affected his lawyer's performance".[2] Only upon such a showing could a Sixth Amendment violation be found. Since the required showing was not made, I agree that the trial court erred in granting postconviction relief.
LEMMON, J., concurs and will assign reasons.
NOTES
[1] Edwards was sentenced to serve seven years in the parish prison with the understanding that if it could not be served in the parish prison because of the length of the sentence, the sentence must then be served in the custody of the Department of Corrections. McNabb was sentenced to serve seven years at hard labor.
[2] By motion filed in the trial court, McNabb withdrew his appeal.
[3] 411 So.2d 1082 (La.1982).
[4] 423 So.2d 1178 (La.1982).
[5] Accord, United States v. Crossman, 663 F.2d 607 (5th Cir.1981), cert. denied.
[6] In Justice Frankfurter's view: "Joint representation is a means of insuring against reciprocal recrimination. A common defense often gives strength against a common attack." Glasser v. United States, 315 U.S. 60, 90, 62 S.Ct. 457, 474, 86 L.Ed. 680 (1942) (dissenting opinion).
[1] A new trial motion of that ground must be filed and disposed of before sentence. La.C. Cr.P. Art. 853.
[2] In postconviction proceedings, the burden is placed upon defendant to substantiate his claim for relief. La.C.Cr.P. Art. 930.2.